## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYRONE PERRY**                                      **CIVIL ACTION**

**VERSUS**                                               **NO. 19-13002**

**STATE OF LOUISIANA**                          **SECTION "T"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

The petitioner, Tyrone Perry, is a convicted inmate incarcerated in the Bayou Dorcheat Correctional Center in Minden, Louisiana.[2]  On June 23, 2016, Perry was

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.  In his federal pleadings, Perry spells his first name "Tyrone," although it is spelled both "Tyrone" and "Tyronne" in the state court pleadings and rulings.

charged by bill of information in Jefferson Parish with being a felon in possession of a weapon, possession of cocaine and battery with injury upon a police officer.[3] He entered a not guilty plea on July 18, 2016.[4] The Louisiana Fifth Circuit Court of Appeal summarized the facts established at trial as follows:

> At approximately 1:05 a.m. on June 1, 2016, Officer Vincente Paz of the Gretna Police Department was dispatched to a disturbance call at an apartment complex located in the 1400 block of Palfrey Street in Gretna. As he approached the area in his marked police car, Officer Paz noticed a black Nissan Titan truck, with its tail lights on, approximately a quarter of a block away from the complex on the right side of the road. Officer Paz passed and pulled up in front of the truck. As he exited his unit, Officer Paz observed the truck roll backwards and hit the vehicle, an Envoy, parked behind it. The Titan then moved forward in an apparent attempt to leave, prompting Officer Paz to approach the truck and shine his flashlight through the windshield to illuminate the inside of the vehicle and to signal the driver to stop. When he did so, he saw a man, later identified as defendant, "kind of reaching down." Defendant thereafter stopped, exited his truck, and walked towards the back of his vehicle to check out the damage.
>
> Officer Paz started asking defendant questions in an attempt to gather information about the accident and to determine if he knew the identity of the owner of the other vehicle. After Officer Paz asked defendant what he was doing in the area, defendant became nervous, started physically shaking, avoided eye contact, and slurred his words. Defendant then walked back to his vehicle and attempted to leave. Despite the officer's directive not to leave, defendant tried to open the door of his vehicle. At that point, Officer Paz grabbed defendant by his right wrist. Defendant then pulled away from him violently and took a "fighting stance." As Officer Paz attempted to again grab defendant's wrist to handcuff him, defendant jerked away, punched him in the face, and fled northbound on Palfrey Street. Although the officer was disoriented from the punch, he managed to call for assistance and chase after defendant.
>
> As defendant ran, Officer Brad Cheramie, who had also responded to the initial disturbance call and had seen defendant punch Officer Paz, pulled out his baton and struck defendant in the leg. Officer Paz then tackled defendant from the rear, and defendant fell to the ground, at which point a physical struggle

---

[3]St. Rec. Vol. 1 of 7, Bill of Information, 6/23/16 (as amended 3/21/17).

[4]St. Rec. Vol. 1 of 7, Minute Entry, 7/18/16.

ensued. Officer Cheramie and Officer Jason Dufrene, who was also on the scene and had observed defendant hit Officer Paz, joined in the struggle to try to handcuff defendant. As the officers tried to stabilize defendant's right hand, Officer Cheramie observed defendant reach with his left hand into his pocket, grab a clear plastic bag containing a white rock-like substance, and toss it backwards in the direction of the patrol unit. Defendant eventually quit struggling and complied with Officer Paz"s command to put his hands behind his back. The officers then handcuffed defendant and conducted a pat down but did not feel any weapons on him. They escorted defendant to the patrol car and conducted a search incident to arrest, which resulted in the recovery of eighty-four dollars and a cell phone.

Once defendant was secured in the patrol car, Officer Cheramie advised Officer Paz of his observations regarding the bag that was tossed during the struggle. The officers went to the area, retrieved the bag, and discovered that it contained forty-nine smaller, clear plastic bags filled with off-white rock-like substances, which tested positive for cocaine.

Thereafter, Officer Corey Newbie of the Gretna Police Department arrived with his dog and conducted a "free air sniff" of defendant's vehicle. As they approached the driver's side door handle area, the dog gave a "passive indication" of a narcotics odor. Officer Newbie then placed the dog inside the vehicle, and the dog kept going back to the driver's seat. A subsequent search of the vehicle resulted in the recovery of a gun from underneath the driver's seat. As a result of this incident, defendant was charged with various offenses, including battery on a police officer, possession with intent to distribute cocaine, and possession of a firearm by a convicted felon.

State v. Perry, 250 So.3d 1180, 1187-88 (La. App. 5th Cir. 2018); State Record Volume 3 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 17-KA-567, pages 2-4, June 27, 2018.

At a March 20, 2017, hearing, the state trial court granted Perry's motion to represent himself.[5] He was tried before a jury on March 21 and 22, 2017, and found guilty as charged as a felon in possession of a firearm (count one) and for battery with injury upon a police officer (count three) and not guilty of possession of cocaine (count

---

[5]St. Rec. Vol. 1 of 7, Minute Entry, 3/20/17; St. Rec. Vol. 5 of 7, Hearing Transcript, 3/20/17.

two).[6]  On March 29, 2017, the state trial court sentenced Perry to 15 years in prison on count one without benefit of parole, probation or suspension of sentence and concurrent with three years in prison for count three.[7]  At the hearing, the State indicated an intent to file a multiple offender bill, but no bill was ever filed.  On August 23, 2017, the state trial court denied for lack of jurisdiction Perry's out-of-time motion to reconsider the sentence.[8]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Perry's appointed counsel asserted four errors:[9]  (1) The state trial court erred by denying the motion to suppress the firearm. (2) The state trial court erred by allowing Perry to represent himself. (3) The state trial court erred by denying certain challenges for cause during voir dire. (4)  The state trial court imposed an excessive sentence on count one.  In his pro se supplemental briefs, Perry asserted the following claims:[10]  (1) The state trial court erred by not removing and replacing appointed counsel on November 14, 2016. (2) The State

---

[6]St. Rec. Vol. 1 of 7, Trial Minutes (3 pages), 3/21/17; Trial Minutes, 3/22/17; Jury Verdict (count one), 3/22/17; Jury Verdict (count two), 3/22/17; Jury Verdict (count three), 3/22/17; St. Rec. Vol. 3 of 7, Trial Transcript, 3/21/17; Trial Transcript, 3/22/17; St. Rec. Vol. 5 of 7, Voir Dire Transcript, 3/21/17; Closing Argument and Jury Instruction Transcript, 3/22/17.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/29/17; St. Rec. Vol. 3 of 7, Sentencing Transcript, 3/29/17.

[8]St. Rec. Vol. 1 of 7, Trial Court Order, 8/23/17; Out-of-Time Motion to Reconsider Sentence, 8/21/17 (dated 8/17/17).

[9]St. Rec. Vol. 3 of 7, Appeal Brief, 2017-KA-567, 2/21/18.

[10]St. Rec. Vol. 3 of 7, Supplemental Brief, 17-KA-567, 4/20/18; Second Supplemental Brief, 17-KA-567, 6/27/18.

failed to prove that Perry was knowingly in possession of the firearm. (3) The state trial court erred by failing to recognize Perry's right to defend himself from illegal arrest.

On June 27, 2018, the Louisiana Fifth Circuit affirmed Perry's convictions and the sentence for count one.[11]  The court denied Perry's challenge to the failure to replace his counsel but did not rule on the rest of Perry's ineffective assistance of counsel claim (pro se claim number one), deferring it to post-conviction review.  The court also held that counsel-filed claim three was not preserved for appeal and, alternatively, that the remaining claims were meritless.

After its errors patent review, the Louisiana Fifth Circuit also remanded the matter in part for resentencing on count three because the state trial court failed to assign the statutorily required parole, probation and suspension of sentence restriction.  On July 30, 2018, the state trial court complied and resentenced Perry on count three to three years in prison without benefit of parole, probation or suspension of sentence.[12]  Perry did not seek review of the resentencing.

On November 14, 2018, the Louisiana Supreme Court denied Perry's related writ application without stated reasons.[13]  Perry's convictions and sentences became final

---

[11]Perry, 250 So.3d at 1187-88; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 17-KA-567, 6/27/18.

[12]St. Rec. Vol. 1 of 7, Resentencing Minutes, 7/30/18.

[13]State v. Perry, 256 So.3d 285 (La. 2018); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2018-KO-1325, 11/14/18; La. S. Ct. Writ Application, 18-KH-0290, 8/8/18 (dated 7/21/18); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2018-KO-1325, 8/8/18.

ninety (90) days later on February 12, 2019, because he did not file a writ application with the United States Supreme Court. <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); <u>Burton v. Stewart</u>, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

On March 29, 2019, Perry submitted a "Motion for Post-Conviction Relief" to the state trial court asserting the following grounds for relief:[14] (1) He was denied effective assistance of counsel when his appointed counsel (a) failed to obtain the identity of a favorable defense witness, (b) refused to subpoena the officers' conduct records as impeachment evidence and (c) pursued plea deals as a defense strategy rather than gathering favorable evidence. (2) The State withheld <u>Brady</u> information related to the identity if the sole, key witness for the defense and other favorable evidence, including the officers' disciplinary records, radio communications, police reports and supplemental reports, evidence reports and photographs, which were produced the day before or at trial. (3) The State failed to answer Perry's questions as to why certain charges placed

---

[14]St. Rec. Vol. 1 of 7, Motion for Post-Conviction Relief, 3/29/19 (envelope dated 3/25/19).

against him during arrest, including use of firearm in a crime involving controlled dangerous substance\violence, hit and run driving, resisting arrest, controlled dangerous substance crime in a school zone and simple criminal damage, were dismissed before trial but had been used to support the probable cause determination. (4) The charges dismissed before trial were used to impose excessive bail. (5) The bill of information was amended before trial without his consent or notice.

On April 2, 2019, the state trial court dismissed the motion without prejudice because Perry did not use the statutorily required form for filing an application for post-conviction relief.[15]  Perry did not seek review of this ruling.

## II.    FEDERAL HABEAS PETITION

On October 7, 2019, the clerk of this court filed Perry's petition for federal habeas corpus relief, in which he asserts the following claims:[16] (1) He received ineffective assistance when his appointed counsel refused to assist in constructing a defense and the state trial judge refused to replace the attorney causing witness information and testimony to be restrained. (2) His Fifth Amendment rights were violated by the unjustifiable seizure of his property with use of extreme force. (3) The evidence was insufficient to prove possession of a firearm. (4) He was denied the right to defend himself from attack during an illegal arrest.

---

[15]St. Rec. Vol. 1 of 7, Trial Court Order, 4/2/19.

[16]Rec. Doc. No. 1.

7

The State filed a response in opposition to Perry's federal petition conceding timeliness. The State asserts that Perry's petition should be dismissed for his failure to exhaust state court review of the first two claims.[17]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Perry's petition, which, for reasons discussed below, is deemed filed on October 1, 2019.[19] The threshold questions in habeas review under the amended statute

---

[17]Rec. Doc. No. 7.

[18]The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[19]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court received and filed Perry's petition on October 7, 2019. Perry certified that he placed his pleadings in the prison mail system on September 23, 2018, which is unlikely considering that the pleading references Perry's state court activity through April 2, 2019. The envelope in which Perry's pleadings were submitted is postmarked October 1, 2019. This is presumed to be the most accurate indication appearing in the record of the date on which he could have presented his pleadings to prison officials for mailing to a federal court. Because timeliness is not an issue, I need not resolve the matter further. In addition, payment of the filing fee does not alter the application of the federal mailbox rule. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Perry's federal habeas petition is timely.  The State asserts that Perry did not exhaust state court review of two of his claims.  My review confirms that Perry exhausted review of all but his ineffective assistance of counsel claim and the newly asserted Fifth Amendment component in his second claim.  However, his failure to exhaust does not prevent the court from disposing of his meritless claims without complete exhaustion.  28 U.S.C. § 2254(b)(2).

IV.     STANDARDS OF A MERITS REVIEW

A.     CLAIMS REVIEWED BY THE STATE COURTS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)). Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of

9

correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a

clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (citations omitted; brackets in original). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

B.   CLAIMS NOT REVIEWED BY THE STATE COURTS

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28

11

U.S.C. § 2254(d).  The deferential AEDPA standards of review do not apply to claims that are not fully adjudicated on the merits in state court.  Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, federal courts review those claims under pre-AEDPA de novo standards of review.  Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted state courts, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).

Perry's claims were not all addressed on the merits by the state courts.  I will consider those claims de novo, although they would fail under either standard.  See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (a claim that fails under a de novo review would necessarily fail under AEDPA's deferential standard of review).

## V.    SEARCH AND SEIZURE (CLAIM NO. 2)

Perry claims that his Fifth Amendment rights were violated by the unjustifiable seizure of his property by use of extreme force.  He also asserts that he was not read Miranda warnings before the officer's initial request to search his truck, a request made before Perry struck the officer and attempted to flee.  He further complains that the search was illegal because it did not locate any drugs in the truck, and he was denied the chance to prove ownership or otherwise contest the seizure of his personal property.  Perry's claim differs from the arguments originally asserted by his appointed counsel in the pretrial motion to suppress and on state court direct appeal.

12

In the pretrial motion and on appeal, Perry's appointed counsel argued that a warrantless search of Perry's truck was unjustified because there was no probable cause to justify the warrantless search under the Fourth Amendment. On appeal, appointed counsel also argued that the search met no recognized exception under the Fourth Amendment. Specifically, his counsel argued that there was no threat to officer safety or that any evidence could disappear because Perry was already restrained in the back of a police unit when his truck was searched. In addition, his appellate counsel argued that the officers' testimony regarding seizure of the cocaine was not credible, based on the not guilty verdict, which calls into question the cause for the stop and manner of the search.

The state trial court denied the motion to suppress following a January 9, 2017, evidentiary hearing.[20] The court held that the circumstances preceding Perry's arrest, the recovery of the cocaine and the alert by the K-9 drug dog on the exterior of the truck provided probable cause for the search of the truck.[21] On appeal, the Louisiana Fifth Circuit dismissed the claim on appeal finding, as did the state trial court, that Perry's

---

[20]St. Rec. Vol. 1 of 7, Minute Entry, 1/9/17; St. Rec. Vol. 3 of 7, Hearing Transcript, 1/9/17.

[21]St. Rec. Vol. 3 of 7, Hearing Transcript, pp. 28-29, 1/9/17.

behavior, including striking the officer, and his attempt to flee created sufficient probable cause and exigency to support a warrantless search under the Fourth Amendment.[22]

In his federal habeas petition, Perry asserts for the first time that his Fifth Amendment, not Fourth Amendment, rights were violated by the search of his truck. His petition does not expressly identify the particular Fifth Amendment right at issue except that the search was "with extreme force." In his post-appeal Louisiana Supreme Court writ application, Perry also mentioned that he was not read Miranda warnings before the officer requested to search the truck, a request the officer made before Perry hit him and attempted to flee.

The Fifth Amendment provides that no person shall be deprived of life, liberty or property without due process of law. However, the Fourth Amendment protects citizens from unreasonable searches and seizures, including arrests and other investigatory stops by the police. Graham v. Connor, 490 U.S. 386, 393-96 (1989); Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998). When a seizure is allegedly unreasonable for lack of probable cause or use of excessive force, the Fourth Amendment rights of the person seized are violated. Graham, 490 U.S. at 393-96; Plumhoff v. Rickard, 572 U.S. 675, 774 (2014) ("A claim that law-enforcement officers used excessive force to effect

---

[22]Perry, 250 So.3d at 1190; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 17-KA-567, pp. 7-8, 6/27/18.

a seizure is governed by the Fourth Amendment's 'reasonableness' standard."); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).

In Graham, the Supreme Court unequivocally stated that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395-96; Estate of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004).

Where an officer has, by means of physical force or show of authority, in some way restrained the liberty of a citizen, a "seizure" has occurred under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 19 (1968).  It is only "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time" that the Fifth and Fourteenth Amendments protect pretrial detainees from an excessive use of force by custodians.  Gutierrez, 139 F.3d at 452 (quoting Valencia v. Wiggins, 981 F.2d 1440, 1444 (5th Cir. 1993)) (emphasis in original, internal quotation marks omitted).  Thus, the use of force during an investigatory stop or to effectuate a related search is to be analyzed under the Fourth Amendment.  Graham, 590 U.S. at 394-395.

Perry's claims arise from actions taken by officers during the investigation of the car accident. His claims were properly considered by the state courts under the Fourth Amendment. However, this federal court's review of Perry's Fourth Amendment claim is limited by the Supreme Court's long-standing prohibition in Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) Id. at 494. The "full and fair" hearing contemplated by Stone refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir. 1986); O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Fifth Circuit Court of Appeals has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002), cert. denied, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." Id. at 1192; Register v. Thaler, 681 F.3d 623, 628 (5th Cir. 2012)

16

(citing Moreno v. Dretke, 450 F.3d 158, 167 (5th Cir. 2006)). "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under Stone." Register, 681 F.3d at 628 (quoting Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980)) (internal quotation marks omitted).

Thus, it is the defendant's opportunity to present a Fourth Amendment claim to the state courts that is the basis of the Stone prohibition, whether that opportunity is actually exercised or unsuccessful. Janecka, 301 F.3d at 320-21. Even when a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the Stone bar to apply. Id. at 320.

The United States Fifth Circuit has also held that the Stone bar applies even in the face of error by the state court in deciding the merits of the Fourth Amendment claim. See Moreno, 450 F.3d at 167; Swicegood v. Alabama, 577 F.2d 1322, 1324-1325 (5th Cir. 1978); Woodard v. Thaler, 702 F. Supp.2d 738, 759-60 (S.D. Tex. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the Stone bar still applied). Likewise, even when the state courts err in disposing of the Fourth Amendment claim on procedural grounds, the Stone bar still applies "with equal force." Williams, 609 F.2d at 219-20.

17

> [I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of <u>Caver</u> dictates that <u>Swicegood</u>'s application of <u>Stone</u> despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims.

<u>Id.</u> at 220; <u>Janecka</u>, 301 F.3d at 321. Thus, to obtain post-conviction relief in federal court, a habeas petitioner must plead and prove that the state court process or proceeding was inadequate. <u>Davis</u>, 803 F.2d at 1372.

In this case, Perry has not alleged error in the disposition of his Fourth Amendment claims except to voice discontent with the unfavorable result. He has not alleged or proven that he had no meaningful opportunity for review of his Fourth Amendment claim in the state courts. He has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. On the contrary, he recognized and utilized the many opportunities available for review of such claims in the Louisiana courts, both pretrial and on appeal. In addition, this court has found that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." <u>Bailey v. Cain</u>, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (order adopting report and recommendation).

Perry took advantage of multiple opportunities to litigate his Fourth Amendment claim related to the search and seizure of his truck. Through his counsel, he filed an

unsuccessful motion to suppress.  On direct appeal, the Louisiana Fifth Circuit found no Fourth Amendment violation or error in the denial of the motion to suppress.  The Louisiana Supreme Court denied his related writ application without stated reasons. The record therefore establishes that the Louisiana courts provided opportunities for Perry to assert his Fourth Amendment claim, and he simply was not successful in obtaining relief. This court's review of Perry's Fourth Amendment claim, including the alleged use of force to effect the search, is barred by the Stone doctrine.  Perry's claim must be dismissed for this reason.

In addition, Perry's claim also fails to the extent he intended to assert that his Fifth Amendment rights were violated because he was not read Miranda warnings before Officer Paz asked to search his truck during the investigation of the car accident.  It is well settled that "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  During an investigatory stop, officers may question, frisk or pat-down the person for weapons. United States v. Williams, 880 F.3d 713, 721 (5th Cir. 2018).  Officer Paz had more than a reasonable suspicion when he witnessed the car accident, saw Perry reach down in the truck before getting out and observed Perry's nervous demeanor during questioning about the accident.

19

Nevertheless, the Fifth Amendment right against self-incrimination and a requirement to provide <u>Miranda</u> warnings only attaches when "an individual is in custody." <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966). An investigatory stop, like that in Perry's case, does <u>not</u> render a person in custody for purposes of <u>Miranda</u>. <u>See</u> <u>United States v. Galberth</u>, 846 F.2d 983, 994 (5th Cir. 1988). The Supreme Court specifically has held that a traffic stop is "more analogous to a so-called '<u>Terry</u> stop'. . . than to a formal arrest" and does not trigger <u>Miranda</u>. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 & 441 (1984) (citing <u>Terry v. Ohio</u>, 392 U.S. 1 (1989)).

In <u>Berkemer</u>, the Supreme Court explained that the Fourth Amendment allows police to stop and detain a person temporarily when his "'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime . . . to 'investigate the circumstances that provoke suspicion.'" <u>Id.</u> at 439-40 (quoting <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 881 (1975)). The Court held that this type of stop, including to investigate a traffic infraction, does not invoke the Fifth Amendment protections pronounced in <u>Miranda</u>. <u>Id.</u> at 440. Thus, Officer Paz was not required to give Perry <u>Miranda</u> warnings when Officer Paz was investigating and questioning Perry about the car accident.

For these reasons, Perry's Fourth Amendment claims are barred from federal habeas review by <u>Stone</u>. He also has failed to establish that the failure to give him <u>Miranda</u> warnings at the initial stop violated his Fifth Amendment rights or that denial

of relief on such a claim was otherwise contrary to Supreme Court precedent.  He is not entitled to habeas relief on this claim.

## VI.    EVIDENCE OF POSSESSION OF A FIREARM (CLAIM NO. THREE)

Perry claims that the evidence was insufficient to support the conviction for possession of a firearm because the weapon was not on his person.  He also asserts that the gun was not reported lost or stolen by its owner and did not have his fingerprints or DNA evidence on it.

Perry asserted this claim pro se on direct appeal to the Louisiana Fifth Circuit. Relying on Jackson v. Virginia, 443 U.S. 307 (1979), and related state law, the court found sufficient evidence to sustain the conviction and establish constructive possession of the weapon.  This was the last reasoned state court opinion on the issue.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.")

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 F. App'x 817, 821 (5th

Cir. 2011). To determine whether the guilty verdict is adequately supported by the evidence, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U.S. at 324 n.16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see Jackson, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). In addition, "[t]he Jackson inquiry 'does not focus on whether the

22

trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F .3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of the foregoing United States Supreme Court precedent. Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 567 U.S. 37, 44 (2012); see also Coleman v. Johnson, 566 U.S. 650, 655 (2012).

Perry was charged with and convicted of being a felon in possession of a weapon based on his 1999 conviction for possession with intent to distribute cocaine.[23]  Under Louisiana law, the offense of being a previously convicted felon in possession of a firearm is defined in part as follows: "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony . . . to possess a firearm or carry a concealed weapon." La. Rev. Stat.

_____

[23]St. Rec. Vol. 1 of 7, Bill of Information (as amended), 6/23/16.

23

§ 14:95.1.  To support a conviction for possession of a firearm by a convicted felon, the State must establish the following: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) the absence of the ten-year statutory limitation period; and (4) the general intent to commit the crime.  State v. Caffrey, 15 So.3d 198, 202 (La. App. 5th Cir. 2009); State v. Ray, 961 So.2d 607 (La. App. 2d Cir. 2007); State v. Robert, 956 So.2d 750 (La. App. 2d Cir. 2007).

As noted by the Louisiana Fifth Circuit, Perry does not challenge the existence of his prior drug conviction or the cleansing period.  Instead, Perry's focus has been on the State's failure to show that he had a weapon on his person or that he had knowledge of or the intent to possess the weapon found under the driver's seat of his truck.

However, specific intent is not necessary for a conviction of being a previously convicted felon in possession of a firearm.  Instead, general intent is all that is required, and it may be inferred from the circumstance of the event and proved by direct or circumstantial evidence.  State v. Brokenberry, 942 So.2d 1209 (La. App. 2d Cir. 2006); State v. Culp, 17 So.3d 429 (La. App. 2d Cir. 2009).  General intent also may be proved through either actual or constructive possession of a firearm.  State v. Law, 46 So.3d 764, 770 (La. App. 2d Cir. 2010); State v. Jamerson, 1 So.3d 827 (La. App. 2d Cir. 2009).

Actual possession of a firearm also is not necessary to prove the possession element of La. Rev. Stat. § 14:95.1.  Instead, constructive possession is sufficient to satisfy the possession element.  State v. Day, 410 So.2d 741, 743 (La. 1982).  A person

is in constructive possession of a firearm if the firearm is subject to his dominion and control, even if dominion and control are only temporary.  State v. Johnson, 870 So.2d 995, 998-99 (La. 2004).

At Perry's trial, the jury received testimony and evidence that Officer Vincent Paz responded to a call of a disturbance in an apartment complex.[24]  Upon his arrival, he saw a black truck with illuminated headlights and brake lights, and stopped his marked police car about 100 feet in front of the truck to determine its involvement in the disturbance.[25] When he exited his car, he saw the truck roll backwards into an unoccupied parked car.[26] He called for assistance from Officer Brad Cheramie to handle the original disturbance so he could handle the car accident.[27]  He shined his flashlight threw the windshield to alert the driver to stop the truck that was now rolling forward.  When the light illuminated the interior, he could see the driver, Perry, reaching down.[28]  He also saw that there was noone else in the truck.

Perry exited his truck to see the damage at the back of his truck.  In responding to questions, he told Officer Paz that he was just visiting in the area and did not know the

---

[24]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 57-58 (Officer Vincent Paz), 3/21/17.

[25]Id. at 57-58 (Paz).

[26]Id. at 58-59 (Paz).

[27]Id. at 60-61 (Paz).

[28]Id. at 61 (Paz).

owner of the other car.[29]  When Officer Paz asked Perry why he was at the complex,

Perry became nervous and began physically to shake.  Perry started to walk back to get

into the truck and Officer Paz told him he was being detained and not allowed to leave.[30]

When Perry tried to open his driver's side door, Officer Paz grabbed his wrist.  Perry

pulled away and Officer Paz attempted to grab his wrist again to cuff him.  Perry jerked

away and punched Officer Paz in the left eye causing the officer to stumble.[31]  At this

point Officers Cheramie and Dufrene arrived to assist and witnessed Perry hit Officer

Paz.[32]

As Officer Paz regained his vision and composure, he saw Perry running and

trying to open his patrol car door.[33]  Officer Paz caught up with Perry and used his left

palm to strike Perry in the face.  Perry fell against the patrol car breaking the side mirror

then fell to the ground.  When Perry tried to get up, Officer Paz tackled him and they

began to struggle on the ground.[34]  Officers Cheramie and Dufrene tried to get Perry into

---

[29]Id. at 62 (Paz).

[30]Id. at 66 (Paz).

[31]Id. at 66 (Paz); Id. at 108 (Officer Brad Cheramie).

[32]Id. at 68 (Paz); Id. at 111 (Cheramie); St. Rec. Vol. 3 of 7, Trial Transcript, pp. 92, 98 (Officer Jason Dufrene), 3/22/17.

[33]Id. at 67 (Paz); Id. at 109 (Cheramie).

[34]Id. at 68 (Paz); Id. at 109 (Cheramie).

26

cuffs as he continued to strike and kick at the officers.[35]  Officer Paz finally restrained him by the neck and Perry stopped fighting as hard to get free.[36]  While Perry was in the neck hold, Officer Cheramie saw him discard a clear plastic bag that was later recovered and found to contain cocaine.[37]  Although Perry was not wholly cooperative, the other officers were able to cuff him behind his back.  Because he was still trying to get free, he was placed in the backseat of Officer Paz's patrol car with the help of other officers who had arrived on the scene.[38]  Officer Paz was treated at the scene by medical personnel for his cut and swollen eye and multiple other scratches.[39]

After Perry was cuffed and in the patrol car, K-9 Officer Corey Newbie's dog sniffed and alerted on the outside of Perry's truck indicating the presence of narcotics in or around the truck.[40]  Officer Newbie and his dog then searched the interior of the truck and the dog alerted again on the front driver's seat.  They found no drugs but a gun was

---

[35]Id. at 68 (Paz); Id. at 109-10 (Cheramie); St. Rec. Vol. 3 of 7, Trial Transcript, p. 94 (Dufrene), 3/22/17.

[36]Id. at 69 (Paz).

[37]Id. at 73-74 (Paz); Id. at 110, 113-14 (Cheramie).

[38]Id. at 69-70 (Paz); Id. at 112-13 (Cheramie).

[39]Id. at 74-75 (Paz).

[40]Id. at 80 (Paz); St. Rec. Vol. 3 of 7, Trial Transcript, pp. 12-13 (Officer Corey Newbie), 3/22/17.

located underneath the seat.[41]  The officers later determined that the truck was registered to Perry.

This evidence, including Perry's suspicious behavior, failure to cooperate and striking the officer to flee the scene, presented more than sufficient circumstances for a reasonable jury to find general intent, guilty knowledge and constructive possession of the weapon in Perry's truck.  See State v. Ennis, 97 So.3d 575, 581 (La. App. 4th Cir. 2012) (defendant's actions and failure to fully cooperate with police can imply criminal intent).  The State was not required to present fingerprint or DNA evidence on the weapon for Perry to be found guilty of constructive possession.  See Marks v. Terrel, No. 12-1132, 2014 WL 1246065, at *16 (E.D. La. Mar. 24, 2014) (Order adopting Report and Recommendation).  On the contrary, general intent or guilty knowledge can be found when the evidence demonstrates that a person is the regular driver of the vehicle and exercises control over the vehicle on a regular basis.  State v. Frank, 549 So.2d 401, 405 (La. App. 3d Cir. 1989).  Possession of the keys to a vehicle containing contraband also has been held sufficient to establish constructive possession.  State v. Washington, 90 So.3d 1157, 1162 (La. App. 5th Cir. 2012) (citing United States v. Martinez, 588 F.2d 495, 498-99 (5th Cir. 1979)).

---

[41]Id. at 80-81 (Paz); St. Rec. Vol. 3 of 7, Trial Transcript, p. 13 (Newbie), 3/22/17.

In addition, Louisiana recognizes that "[a] defendant's attempt to flee from police is also viewed as evidence of guilty knowledge." <u>State in the Interest of J.W.</u>, 95 So.3d 1181, 1187 (La. App. 4th Cir. 2012) (citing <u>State v. Petit</u>, 463 So.2d 749 (La. App. 4th Cir. 1985)). This is consistent with the United States Supreme Court's decree that "[h]eadlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-25 (2000).

For these reasons, the evidence presented at trial was sufficient for a reasonable jury to find Perry had at least general intent and was in constructive possession of the weapon seized from his truck. Perry has failed to establish that the state courts erred in finding sufficient evidence to prove him to be a felon in possession of the weapon in the truck. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Jackson</u>. He is not entitled to relief on this claim.

VII.   <u>RESISTING ARREST(CLAIM NO. FOUR)</u>

Perry claims that he had a right to defend himself from unprovoked attack by Officer Paz after he refused to allow the search of his truck and tried to leave. He claims that he simply defended himself from the attack by striking the officer and trying to run back to the house he had been visiting.

Perry asserted this claim pro se on direct appeal. The Louisiana Fifth Circuit recognized Louisiana's "time-honored right" for a person to resist an unlawful arrest.[42] The court further explained that the right is only available when there is an illegal arrest and only for the amount of force necessary in the situation.[43] In determining that Perry's arrest was legal, the court examined the facts and determined that "Officer Paz had probable cause to arrest [Perry] when he refused to remain at the scene after hitting the vehicle behind him."[44] This was the last reasoned state court opinion on the claim. Wilson, 138 S. Ct. at 1192.

To the extent Perry argues that the state courts' denial of relief violated Louisiana law regarding the right to resist, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted). Federal habeas review does not lie for errors of state law. Swarthout v. Cooke, 562 U.S. 216, 219 (2011); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Instead, this court's analysis must focus on due process considerations, and due process requires that the court grant habeas relief only when the errors of the state court make the underlying

---

[42]Perry, 250 So.3d at 1198; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 17-KA-567, pp. 21-22, 6/27/18.

[43]Id.

[44]Id.

proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).

Federal law is long-settled that the due process rights of an accused have been adequately protected if he has been given the opportunity to present his defense, to cross-examine witnesses and to present testimony.  See Washington v. Texas, 388 U.S. 14, 20 (1967); Pointer v. Texas, 380 U.S. 400 (1965); In re Oliver, 333 U.S. 257 (1948). The Supreme Court has held that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)(citations omitted)). The Court recognized further that "an essential component of procedural fairness is an opportunity to be heard." Id. The right, however, is not unfettered or absolute. Montona v. Egelhoff, 518 U.S. 37, 62 (1996).  A violation will only occur when the defendant is denied the opportunity to cross-examine or is prevented from putting a witness on the stand or from introducing evidence.  Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *6 (5th Cir. Apr.16, 2002) (quoting United States v. Scheffer, 523 U.S. 303, 329 n.16 (1998)).

This court's first inquiry is whether Perry had a viable defense to assert based on his claim that he had a right under Louisiana law to defend himself from an unlawful

detention and alleged attack by Officer Paz.  The existence of the right to resist an unlawful <u>arrest</u> was confirmed by the Louisiana Fifth Circuit in Perry's direct appeal. However, there had been no arrest when Officer Paz questioned Perry about the car accident and Perry attempted flee and struck Officer Paz in the face.  Perry had simply been detained for investigation of the accident.  Louisiana law does not recognize a right to defend one's self during a temporary investigatory detention (as opposed to arrest). Thus, Perry had no right-to-resist defense to argue at trial.

In <u>State v. Sims</u>, 851 So.2d 1039 (La. 2003), the Louisiana Supreme Court declined to extend or recognize a person's right to defend during a temporary detention or investigatory stop.  In <u>Sims,</u> the defendant was charged with battery on a police officer after he struggled with officers in an effort to prevent a pat down search during an investigatory stop.  <u>Id.</u> at 1041.  Sims looked youthful and was seen by officers after curfew in an area known for juvenile crime and drug use.  The Louisiana Supreme Court found that, although Sims was 18 years old,  there was sufficient probable cause for the initial stop based on the officers' reasonable belief that Sims was violating a juvenile curfew based on his youthful appearance.  <u>Id.</u> at 1043.  The court found no factual support to find cause or motivation for the frisk.  Nevertheless, the court concluded that Sims had no right to resist a temporary investigatory detention or related frisk under Louisiana's long-standing rule allowing a person to resist an unlawful arrest. <u>Id.</u> at 1047.

32

Although a single lower Louisiana appellate court has found that Sims was legislatively overruled, State v. Manuel, 946 So.2d 245, 248 (La. App. 4th Cir. 2006), other state and federal courts in Louisiana follow the Sims rule. See, e.g., Trammell v. Cain, No. 14-2477, 2017 WL 1352234, at *4 (W.D. La. Mar. 17, 2017) (citing Sims, 851 So.2d at 1039) ("Louisiana recognizes a citizen's right to resist an unlawful arrest, but it has held that a citizen does not have the right to resist an unlawful stop-and-frisk by committing a battery on the police officer."); Smith v. City of Shreveport, 73 So.3d 496, 501 (La. App. 2d Cir. 2011) (citing Sims, 851 So.2d at 1039) (". . . there is no right to resist an unlawful stop-and-frisk.")  In any case, there is no question that Louisiana law does not support a person's right to resist a lawful investigatory detention. Manuel, 946 So.2d at 248; accord Perry v. City of Bossier, No. 17-0583, 2018 WL 5074674, at *15 & n.4 (W.D. La. Oct. 17, 2018).

In Perry's case, the Louisiana courts repeatedly found pretrial and on appeal that the initial stop and detention were lawful because Officer Paz had probable cause to detain and question Perry after witnessing Perry hit the car parked behind him.  Perry has not argued otherwise.  Instead, he asserts that Officer Paz had no right to search his truck in connection with the car accident, and he had a right to defend his property.

Perry was not denied the right to present his defense.  Perry undoubtedly had the opportunity at trial to present evidence, question witnesses and argue to the jury that Officer Paz lacked probable cause to search his truck and that he had a right to defend

33

himself and his property from unlawful actions by the officers. Perry questioned each of the officers on cross-examination and direct exam for the defense about the circumstances and alleged lack of probable cause to detain him and search his truck. During closing argument, Perry explained to the jury how the Fourth Amendment protects citizens from unlawful search and seizure, how the officers in his case acted unlawfully and how he stood up for his personal rights.[45]

Based on this record, Perry was not denied due process or the right to present a defense that he had a right to resist. The state courts' denial of relief on this claim did not violate due process and was not contrary to Supreme Court law. He is not entitled to relief on this issue.

## VIII.   EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. ONE)

Perry claims that his appointed counsel refused to assist in constructing a defense to the charges and "restrained" witness information. He also claims that the state trial court denied his right to effective counsel when it refused to replace his counsel. Perry wrote only a brief, fragmented sentence to state this claim; thus, his claims in this court are wholly conclusory and unexplained.

The state court record includes several instances when Perry expressed his discontent with his appointed counsel's handling of the case. Perry insisted that the case

---

[45]St. Rec. Vol. 5 of 7, Closing argument and Jury Instruction Transcript, pp. 21-22, 3/22/17.

and defense proceed as he wanted, despite his counsel's advice and actions. For example, on November 16, 2016, before trial, Perry wrote the following to the state trial court about the November 14, 2016, denial of his request for replacement counsel:[46]

> The person who witnessed my beating by police, name is 'Ceanndra' something, I don't know her last name an[d] address. If I did I would have given it to Mr. Vedros already, so he could've located her. She was arrested for a[n] attachment after she told police to stop doing me, "beating & choking me," like that. Her information is in J.P.C.C. booking log that morning because I seen her get booked along side of me. So Mr. Vedros should have her information already if a private investigator just look at G.P.P. arrest log that night or J.P.C.C. intake booking for that night. I was told by Mr. Vedros, that the information about the witness in my defense, does not exist which is false! I was with her, her sister, and brother-in-law, before my arrest that night. An[d] there were camera's on the apartment complex where all this happened at, which I told Mr. Vedros about, which will show what took placed before, during, and after my arrest. Which he told me he can't get. Police video and radio communication from that night and the call that made them come in the area where I was, Mr. Vedros told me he can't get. Plus the discipline reports of these officers who are involve in my arrest & beating, Mr. Vedros told me he can't get it for my defense. An[d] I been asking him to get these things since our first meeting in July 2016.

In his state appeal memorandum, Perry also argued that his appointed counsel should have been replaced because he failed to follow Perry's instructions to gather character information about Perry's work record and payment history on the truck and failed to locate and produce the woman arrested at the scene to find out what she knew.[47] He also complained that his counsel failed to object at trial to the prosecutor's actions.

---

[46]St. Rec. Vol. 1 of 7, Letter to Court, 11/21/16 (dated 11/16/16).

[47]St. Rec. Vol. 3 of 7, Supplemental Brief, 17-KA-567, pp. 12-13, 4/20/18.

The Louisiana Fifth Circuit addressed the arguments in two parts. First, citing state law, the court denied relief as to his claim that the state trial court should have replaced appointed counsel, finding that Perry had no right to appointment of a particular attorney.[48] Next, as to Perry's claims challenging counsel's performance, the court deferred the claim for Perry to assert in an application for post-conviction review.[49]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Strickland v. Washington, 466 U.S. 668, 698 (1984); Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent. Where the state courts did not consider Perry's claims on the merits, I have considered them de novo.

In Strickland, 466 U.S. at 697, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[48] Perry, 250 So.3d at 1196; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 17-KA-567, p. 17, 6/27/18.

[49] Perry, 250 So.3d at 1198; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 17-KA-567, p. 18, 6/27/18.

of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, 562 U.S. 86, 112 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington court observed that "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." Id. The court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."  Harrington, 562 U.S. at 105.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    REQUEST FOR DIFFERENT COUNSEL

Perry claims that the state trial court erred when it failed to replace his appointed counsel with a different indigent defender.  The Louisiana Fifth Circuit denied this claim finding that Perry had no right to counsel of his choosing and noting that once Perry was allowed to represent himself, appointed counsel acted only in a stand-by capacity.  This was the last reasoned state court opinion on this issue.  See Wilson, 138 S. Ct. at 1192.

38

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Wrongful deprivation of choice of counsel is a "structural error" that "pervades the entire trial." United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006). The Supreme Court has recognized that "[d]ifferent lawyers do all kinds of things differently, sometimes 'affect[ing] whether and on what terms the defendant . . . plea bargains, or decides instead to go to trial' - and if the latter, possibly affecting whether she gets convicted or what sentence she receives. So for defendants . . . having the ability to retain the 'counsel [they] believe[ ] to be best' - and who might in fact be superior to any existing alternatives - matters profoundly." Kaley v. United States, 571 U.S. 320, 337 (2014) (footnote and citations omitted).

However, the right to counsel of choice is not absolute. Gonzalez-Lopez, 548 U.S. at 144. The Supreme Court recognizes that the right to choose counsel extends to a defendant who does not require appointed counsel. Wheat v. United States, 486 U.S. 153, 159 (1988); Gonzalez-Lopez, 548 U.S. at 144. "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Gonzalez-Lopez, 548 U.S. at 144 (citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625 (1989)). For example, a defendant cannot insist

39

on counsel who is not a member of the proper bar or demand that a court accept his waiver of conflict-free counsel. Wheat, 486 U.S. at 159-160.

Instead, the Supreme Court recognizes a trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . [and] against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 151–52 (citing Wheat, 486 U.S. at 163-164 and Morris v. Slappy, 461 U.S. 1, 11-12 (1983)). Thus, a trial court has broad discretion and "power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." Gonzalez-Lopez, 548 U.S. at 151-52. For example, "trial courts must necessarily be wary of last minute requests to change counsel lest they impede the prompt and efficient administration of justice." United States v. Pineda Pineda, 481 F. App'x 211, 212 (5th Cir. 2012) (quoting McQueen v. Blackburn, 755 F.2d 1174, 1178 (5th Cir. 1985)); United States v. Magee, 741 F.2d 93, 95 (5th Cir. 1984) (". . . it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance.")

The record reflects that, on November 14, 2016, Perry notified the state trial court that he would retain his own attorney.[50] His letter to the state trial court dated November 16, 2016, set out his displeasure with his appointed counsel's failure to file certain

---

[50]St. Rec. Vol. 1 of 7, Minute Entry, 11/14/16.

pleadings Perry wanted filed and to obtain information Perry believed relevant.[51] Despite his representations, Perry did not retain counsel. Instead, he would have required appointment of different counsel if his appointed counsel was replaced. He therefore had no absolute right to choose his own or different counsel based simply on his disagreement with how his appointed counsel was preparing his case.

As a general rule, disagreements between a defendant and his trial counsel do not implicate the Sixth Amendment, which guarantees effective assistance of counsel, not necessarily a "meaningful relationship" between an accused and his counsel. Morris, 461 U.S. at 14. As a result, there is no clearly established federal law that would deem a disagreeable relationship between counsel and client an actual conflict under the Sixth Amendment or require the state trial court to appoint different counsel. Accord United States v. Solina, 733 F.2d 1208, 1211 (7th Cir. 1984) (antagonism between attorney and client did not amount to a conflict of interest).

Perry has not established a constitutional error or denial of his right to counsel based on the state trial court's failure to appoint different counsel. The record demonstrates that his counsel was prepared for the numerous pretrial proceedings and competently represented Perry as determined by the state courts. In addition, as discussed below in this report, also Perry has not established that his counsel's

---

[51]St. Rec. Vol. 1 of 7, Letter to the Court, 11/21/16 (dated 11/16/16).

performance was ineffective under <u>Strickland</u>. Perry has not demonstrated that the sate courts' denial of relief on his claim that his counsel should have been replaced was contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this claim.

B.    <u>COUNSEL'S ASSISTANCE AT TRIAL</u>

To the extent Perry may assert that he received ineffective assistance from his appointed counsel at trial, after he was allowed to represent himself, he has failed to establish his entitlement to relief under <u>Strickland</u>.   The federal courts have long recognized that once a defendant voluntarily waives his right to counsel and represents himself, he is prevented from asserting a claim of ineffective assistance of counsel. <u>Faretta v. California</u>, 422 U.S. 806, 834 n.46 (1975).   <u>Faretta</u> made clear that, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" (emphasis added) <u>Id.</u> The Supreme Court has "emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" <u>Godinez v. Moran</u>, 509 U.S. 389, 400 (1993) (quoting <u>Faretta</u>, 422 U.S. at 834).

Thus, when Perry's appointed counsel was made stand-by counsel for trial, counsel had no duty to continue representing Perry outside of that limited role.  <u>United States v. Daniels</u>, 572 F.2d 535, 540 (5th Cir. 1978) (noting that although a defendant has a constitutional right to represent himself, there is no right to hybrid representation, partly

42

by counsel and partly by himself).  Perry is not entitled to relief for any alleged claim that stand-by counsel did not adequately represent him or present a defense.  See United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (citing United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)); see United States v. Mikolajczyk, 137 F.3d 237, 246 (5th Cir. 1998) (opining that, if defendant "had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights.")

The transcript demonstrates that Perry's counsel was entirely diligent in his role as stand-by counsel and remained vigilant in his efforts to assure Perry remained on track during trial when allowed to do so.  Perry is not entitled to relief on this claim.

C.    FAILURE TO CONSTRUCT A DEFENSE AND LOCATE WITNESS

Perry claims that his appointed counsel provided ineffective assistance before trial when he failed to assist in constructing a defense and in obtaining witness information and testimony needed for trial.  Perry asserted these arguments on direct appeal, but the Louisiana Fifth Circuit deferred them to state court post-conviction review, which Perry did not properly pursue.

Perry's state court pleadings indicate that he wanted counsel to pursue a defense based on his own alleged credibility; i.e., that he had been working hard and paying for his truck, so any evidence of his possession of drugs and guns somehow should have been overlooked.  To prevail on a claim that counsel was ineffective for failing to pursue

a certain defense, a petitioner must show that the defense in question was in fact a viable one. Otero v. Louisiana, No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013) (order adopting report and recommendation); Higgins v. Cain, No. 09-2632, 2010 WL 890998, at *9 n.24 (E.D. La. Mar. 8, 2010) (order adopting report and recommendation), aff'd, 434 F. App'x 405 (5th Cir. 2011), cert. denied, 565 U.S. 1246 (2012).

Perry's work experience was not relevant as a defense to any element of either possession of cocaine or felon in possession of a weapon. On the other hand, his ownership of the vehicle played an inculpatory role in the placing of the charges and the evidence against him at trial to prove his constructive possession. Perry's claim fails to demonstrate a need for counsel to have pursued a defense further based on either concern. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." United States v. Cronic, 466 U.S. 648, 656 n.19 (1984). Furthermore, "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones, 163 F.3d at 304 (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989)). This is true in Perry's case.

Perry has failed to demonstrate deficient performance arising from his claim that counsel should have looked for other defenses despite the overwhelming evidence of his guilt.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Rather, to prevail on such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).  Perry in no way meets this standard.

Perry has identified no exculpatory evidence that would have been discoverable through more pretrial investigation or that was not already part of the trial; e.g., the unidentified woman at the scene who interfered with the ongoing investigation.  Perry's pretrial letter to the state trial court indicates that Perry's counsel was given vague information about the woman, "Ceanndra," and counsel could not locate any information

45

about her.  Perry acknowledged at trial that his counsel had used a private investigator before trial to assist in locating her.[52]  Perry also has not indicated what the woman knew, if anything.  He only knew that she was or may have been present at the scene.

Based on these assertions, it appears that counsel was not deficient in that he made an unsuccessful effort to locate information about the woman.  Perry cannot show that the failure to locate her was prejudicial in any way because he did not know how or if the woman would testify.  See Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)) ("'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"); Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008)) (for uncalled witnesses, the petitioner must name the witness, demonstrate a consent to testify, set out proposed testimony, and show that the testimony was favorable to a particular defense.)

"[T]he seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"  Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).  Without some proper indication as to how this person would have testified, Perry can not prove ineffective

---

[52]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 107-09, 3/22/17.

assistance of counsel.  See, United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011).

Furthermore, the record reflects that the woman was not present during Perry's detention and attempted flight.  At trial, Perry questioned Officer Kolby Arabie, who assisted Officer Paz with getting Perry into the patrol car after he was handcuffed.[53] Officer Arabie testified that after Perry was already in handcuffs, a female possibly named "Mrs. Rashone" approached them at the back of the car.[54]  Officer Arabie instructed Rashone to get back to the sidewalk, and at first she complied.[55]  After Perry was in the patrol car, Rashone repeatedly approached the patrol car yelling profanities and causing a disturbance, and she was repeatedly asked to leave the area.  She was eventually "apprehended" for interfering with a police investigation and disturbing the peace.[56]

Officer Arabie's testimony is relevant to establish that, assuming as Perry has that "Ceanndra" and "Mrs. Rashone" are the same person, she did not appear on the scene

---

[53]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 103-04 (Officer Kolby Arabie), 3/22/17.

[54]Id. at 104 (Arabie).

[55]Id. at 105 (Arabie).

[56]Id.

until <u>after</u> Perry was handcuffed and being placed in the patrol car.  This would mean that she missed and could not have testified about the initial encounter between Officer Paz and Perry or the scuffle between Perry and the officers after Perry struck Officer Paz and attempted to flee the scene. Perry can show no prejudice resulting from his counsel's failure to locate a woman who could not have favorably testified for the defense about an incident she did not witness.

Perry has failed to prove that he received ineffective assistance of counsel in his appointed counsel's investigation and preparation leading up to trial, at which Perry represented himself.  He has not met the heavy burden of establishing either prong of <u>Strickland</u>.  To the extent Perry's claims were considered on the merits by the state courts, the denial of relief was not contrary to or an unreasonable application of <u>Strickland</u>.  Perry is not entitled to relief on this claim.

## <u>**RECOMMENDATION**</u>

For the foregoing reasons, it is **RECOMMENDED** that Tyrone Perry's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[57]

New Orleans, Louisiana, this ____30th____ day of March, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[57]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

49